UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVELYN DEJESUS, XAVIER O. PUNTIEL,
*and* JOSHUA DEJESUS,

*Plaintiffs*,

v.

CITY OF YONKERS, JASON PARILLO, *and*
YONKERS POLICE OFFICERS JOHN DOES
#1-20, *in their official and individual capacities*,

*Defendants*.

No. 22-CV-2817 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Joshua Fuld Nessen, Esq.
Maddox Law Firm
New Canaan, CT
*Counsel for Plaintiff Evelyn Dejesus*

Mohammed Ahmed Gangat, Esq.
Law Office of Mohammed Gangat
New York, NY
*Counsel for Plaintiffs Evelyn Dejesus, Xavier O. Puntiel, and Joshua Dejesus*

Michael Jeffrey Ashraf, Esq.
Rory Carleton McCormick, Esq.
City of Yonkers Corporation Counsel
Yonkers, NY
*Counsel for Defendants City of Yonkers and Jason Parillo*

KENNETH M.  KARAS, United States District Judge:

Evelyn Dejesus ("Evelyn"), Xavier O. Puntiel ("Xavier"), and Joshua Dejesus ("Joshua")

(collectively, "Plaintiffs") bring this Action against the City of Yonkers, Officer Jason Parillo

("Parillo"), and Yonkers Police Officers John Does #1-20 ("John Doe Officers")[1] (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983"), for false arrest, excessive force, lack of due process, malicious prosecution.  (*See generally* Compl. (Dkt. No. 1).)[2]  Before the Court is Defendants' Motion for Summary Judgment against Plaintiffs for all claims brought in the Complaint.  (*See* Defs' Mem. in Support of Mot. ("Defs' Mem.") (Dkt. No. 34).)

For the reasons stated herein, Defendants' Motion is denied.

### I.  Background

#### A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1.  (*See* Defendants' 56.1 Statement ("Defs' 56.1") (Dkt. No. 35); Plaintiffs' Counter 56.1 Statement ("Pls' 56.1") (Dkt. No. 39).)[3]

---

[1] The Court notes that the Complaint refers alternatively to "Does #1-14" and "Does #1-20."  (*Compare* Compl. at 1 & ¶¶ 18, 26, *with id.* at 1, 9–10.)  The Court will refer to "Does #1-20" as this is consistent with the Court's review of the record and the Parties' briefing.

[2] The Complaint includes claims against different combinations of Defendants.  The false arrest claim and excessive force claims are alleged against Defendants John Does #1-20, (*see* Compl. at 9–10), the lack of due process claim is alleged against "Individual Officer Defendants," (*see id.* at 11), the "municipal and county liability" claim is alleged against the City of Yonkers and County of Westchester, (*see id.* at 12), and the malicious prosecution claim is alleged against all Defendants, (*see id.* at 14).  However, Plaintiffs have abandoned their claims against the City of Yonkers, their due process claim, and any state constitutional or tort claims.  (*See* Pls' Mem. in Opp. ("Pls' Opp.") (Dkt. No. 36) 1.)  *See Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *14 (S.D.N.Y. Sept. 29, 2023) ("A party abandons a claim in the context of a summary judgment motion when she does not respond to arguments concerning that claim." (quoting *Bryant v. Steele*, 462 F. Supp. 3d 249, 270 (E.D.N.Y. 2020))).  Also, it bears noting that on October 4, 2022, Plaintiffs voluntarily dismissed all claims against the County of Westchester.  (Dkt. No. 16.)

[3] Plaintiffs' Counter 56.1 Statement fails to comply with the Court's Individual Rules of Practice § II.D, which requires that the opposing party "must reproduce each entry in the moving party's Rule 56.1 Statement and set out the opposing party's response directly beneath it."  Instead, Plaintiffs fail to reproduce facts they do not deny.  (*See, e.g.*, Pls' 56.1 ¶¶ 9–11.)  Plaintiffs' failure to reproduce each entry in "[Defendants'] Rule 56.1 Statement defeats the

Additionally, where appropriate, the Court cites directly to the admissible evidence submitted by the Parties.  The facts as described below are in dispute to the extent indicated.

Since 2018 and during the incident at issue, Evelyn and her two sons, Xavier and Joshua, resided at 292 Woodworth Avenue, Apartment 2S, Yonkers, New York (the "Apartment").  (Decl. of Evelyn Dejesus ("Evelyn Decl.") (Dkt. No. 37-1) ¶ 5.)  On the night of April 5, 2019, Evelyn, Evelyn's boyfriend Michael Yodice, Xavier, Joshua, and Joshua's girlfriend Julia Chamberlain were in the Apartment.  (Decl. of Joshua Dejesus ("Joshua Decl.") (Dkt. No. 37-2) ¶¶ 5–7.)

During the morning of April 6, 2019, Parillo and other Yonkers police officers responded to the Apartment on a report of a domestic dispute involving the use of a knife.  (Pls' 56.1 ¶ 6.) The Parties dispute the timing of the police response—Defendants assert that the officers responded at around 5:00 AM, while Plaintiffs put the time at around 6:00 AM.  (*See id.*; *see also* Decl. of Michael Ashraf ("Ashraf Decl."), Ex. B ("Police Report") (Dkt. No. 33-2) at 1 (copy of the Yonkers Police Department report noting the time of the incident as between 6:00 and 6:09 AM).)

---

purpose of [the Court's] individual [rule], which is designed to obviate the need to go back and forth between the two Rule 56.1 Statements."  *Gilani v. Teneo, Inc.*, No. 20-CV-1785, 2021 WL 3501330, at *1 n.1 (S.D.N.Y. Aug. 4, 2021).

"Courts regularly deny summary judgment where a movant fails to comply with Rule 56.1, including when they fail to submit a 56.1 statement."  *See Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-CV-8870, 2024 WL 4817649, at *1 n.2 (S.D.N.Y. Nov. 18, 2024); *Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, No. 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15, 2014) ("The failure to file a Rule 56.1 Statement is, on its own, grounds for denial of a motion for summary judgment."); *Bristol v. Schenk*, No. 14-CV-6647, 2017 WL 9485715, at *4–5 (E.D.N.Y. July 31, 2017) (collecting cases).  However, the Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024).

The Court will exercise its discretion here and overlook Plaintiffs' failure.  The Court cautions Plaintiffs that compliance with local rules and individual rules of practice is not a matter to be taken lightly or ignored.

Defendants claim that, upon the officers' arrival, they were informed by a building resident that "she had seen and recorded a verbal dispute between a resident of [the Apartment] and an unknown female." (Pls' 56.1 ¶ 7.) Plaintiffs dispute whether such a conversation between the officers and the resident took place—Parillo testified that he saw and spoke to a male resident, who had called 911 and "had witnessed [a] male and female in a dispute with a knife." (*See* Decl. of Joshua Fuld Nessen ("Nessen Decl."), Ex. 7 (Dkt. No. 38-1) at ECF 5–8; *see also* Pls' 56.1 ¶ 8.)

Upon their arrival, Parillo and Officer Joseph Reagan ("Reagan") repeatedly knocked on the door of the Apartment while identifying themselves as Yonkers police officers. (Pls' 56.1 ¶ 9.) Parillo and Reagan could hear movement inside the Apartment but did not receive a response. (*Id.* ¶ 10.) The officers stated that if the occupants did not open the door, they would have no choice but to force the door open. (*Id.*) The Parties dispute what the officers next told Plaintiffs—Defendants assert that the officers advised Plaintiffs that they had to speak to them to ascertain their safety, while Plaintiffs claim that the officers refused to divulge why they wanted to enter the Apartment. (*See id.* ¶ 12; Evelyn Decl. ¶ 10 ("I never heard the Police tell [Xavier and Joshua] the reason they needed to enter the [A]partment."); Joshua Decl. ¶ 15 ("My mother and brother also asked the police why they wanted to enter our apartment, but received no explanation."); Decl. of Xavier Puntiel ("Xavier Decl.") (Dkt. No. 37-3) ¶¶ 10–11 ("[The officers] did not explain why they needed to come into the apartment.").)

Approximately 45 minutes after knocking, officers broke down the door and entered the Apartment. (Pls' 56.1 ¶¶ 13, 20.) The Parties dispute what, if any, directions the officers gave to Plaintiffs upon entering. Defendants assert that Joshua ignored directives to face a wall and show his hands, while Plaintiffs counter that Joshua was given no opportunity to comply, was

slammed onto the floor, and had an officer place his knee on Joshua's neck. (*See id.* ¶¶ 21–22.)
Defendants similarly assert that Xavier was directed to place his hands behind his back, but
Plaintiffs assert that he was immediately grabbed and thrown on the floor. (*See id.* ¶¶ 25–26.)[4]

Plaintiffs were eventually arrested. (*Id.* ¶ 27.) Evelyn, Xavier, and Joshua were charged
with obstructing governmental administration in the second degree, N.Y. Pen. L. § 195.05, and
resisting arrest, N.Y. Pen. L. § 205.30. (*Id.*) Evelyn was also charged with assault in the second
degree, N.Y. Pen. L. § 120.05. (*Id.* ¶ 28.) The accusatory instruments were signed by Parillo.
(*Id.* ¶ 30.) Following their arraignment and release later on April 6, 2019, Plaintiffs were treated
for scratches and bruising, and Evelyn was additionally treated for complaints of pain and
extensive bruising. (*Id.* ¶ 32.)

On August 17, 2021, all charges against Plaintiffs were dismissed. (*Id.* ¶ 33.)

B.  Procedural History

Plaintiffs initiated this Action on April 5, 2022. (*See* Compl.) Defendants filed an
Answer on April 21, 2022. (Dkt. No. 8.) The case was designated to the Southern District of
New York's 1983 Plan, which led to a mediation conference on July 26, 2022. (*See* Dkt., Minute
Entry dated July 26, 2022.) On September 13, 2022, the mediator issued a report indicating that
mediation was unsuccessful. (*See generally* Dkt.)

On February 17, 2023, the Parties submitted a status report indicating that discovery was
ongoing. (Dkt. No. 17.) On October 26, 2023, the Court set a discovery deadline of December

---

[4] Curiously, Defendants' 56.1 Statement contains no facts about Evelyn's encounter with
law enforcement, despite the fact that she was charged with assault. Evelyn avers that she was
thrown on the floor, grabbed by the neck, punched, and had the officers' knees placed on her
back. (Evelyn Decl. ¶¶ 15, 17, 19.) Evelyn also claims in her declaration that she did not jump
on an officer to prevent him from handcuffing Xavier, (*id.* ¶16), apparently in response to an
officer's report that describes such a situation, (*see* Police Report 5).

15, 2023.  (Dkt., Minute Entry dated October 26, 2023.)  Following the submission of pre-motion letters and a conference (Dkt. Nos. 27-30), the Court set a briefing schedule on March 19, 2024.  (Dkt. No. 31.)  On April 19, 2024, Defendants filed their Motion for Summary Judgment. (Not. of Mot. (Dkt. No. 32); Defs' Mem.; Ashraf Decl.; Defs' 56.1.)  On May 21, 2024, Plaintiffs filed their Opposition.  (Pls' Opp.; Pls' 56.1; Nessen Decl. (Dkt Nos. 37–38).)  On May 22, 2024, Defendants filed a Reply.  (Defs' Reply in Supp. ("Defs' Reply") (Dkt. No. 40)).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order

to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law."  *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims."  *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits or deposition testimony

to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

### B.  Analysis

As a threshold matter, it is necessary to take stock of the parties and claims that remain in this Action:  the remaining claims are for false arrest, excessive force, and malicious prosecution, and the remaining Defendants are Parillo and John Doe Officers.

Plaintiffs have failed to serve John Doe Officers and offer no evidence regarding the identity of these Officer Defendants.  Discovery in this Action has now closed.  (Defs' Mem. 1 ("Discovery in the matter has concluded"); *see also* Dkt., Minute Entry dated October 26, 2023 (ordering the Parties to complete discovery by December 15, 2023).)  It is within the Court's power to dismiss unidentified defendants at the summary judgment stage.  *See DiVincenzi v. City of New York*, No. 19-CV-6012, 2023 WL 3756361, at *5 (S.D.N.Y. June 1, 2023).  Here, because "discovery has closed and the Plaintiff[s] ha[ve] had ample time and opportunity to identify and serve [John Doe Officers], it is appropriate to dismiss [John Doe Officers]." *Tarrant v. City of Mount Vernon*, No. 20-CV-9004, 2022 WL 17070062, at *3 (S.D.N.Y. Nov. 17, 2022) (quoting

*Sachs v. Cantwell*, No. 10-CV-1663, 2012 WL 3822220, at *10 (S.D.N.Y. Sept. 4, 2012)).

Accordingly, any claims against John Doe Officers are dismissed without prejudice. *See Scott v. City of Mount Vernon*, No. 14-CV-4441, 2017 WL 1194490, at *33 (S.D.N.Y. Mar. 30, 2017).

As such, Parillo is the only remaining Defendant and the remaining claims against him are for false arrest, excessive force, and malicious prosecution.[5]  The Court addresses the claims in turn.

### 1. False Arrest

Plaintiffs claim they were falsely arrested.  (*See* Compl. ¶¶ 62–69.)  A Section 1983 claim for false arrest "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A Section 1983 false arrest claim is substantially the same as a claim of false arrest under New York law.  *Id.*; *see also Higginbotham v. Sylvester*, 741 F. App'x 28, 30 (2d Cir.

---

[5] The only claim explicitly asserted against Parillo in the Complaint is for malicious prosecution.  (*See* Compl. at 14 (asserting the malicious prosecution claim "[a]gainst "[a]ll Defendants")).  The claims for false arrest and excessive force are asserted against the John Doe Officers.  (*See id.* at 9–10 (asserting the claims "[a]gainst the Individual Officer Defendants John Does #1-20").)  Federal Rule of Civil Procedure 8(a) "does not demand that a complaint be a model of clarity" but, "at a minimum," it requires that each defendant be given "fair notice of what the plaintiff's claim is and the ground upon which it rests."  *Manchanda v. Navient Student Loans*, No. 19-CV-5121, 2020 WL 5802238, at *2 (S.D.N.Y. Sept. 29, 2020) (quoting *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (summary order)).

Here, despite Plaintiffs' inartful drafting, it is clear that Parillo is on notice.  Defendants' Memorandum in support of their Motion reads the Complaint as asserting the false arrest and excessive force claims against Parillo.  (*See* Defs' Mem. 5 (discussing Parillo as having probable cause to arrest in relation to the false arrest claim); *id.* 10 (describing the Complaint as "assert[ing] a Section 1983 excessive force [claim] . . . against [Parillo and John Doe Officers]").)  That Defendants responded in this manner weighs in favor of finding that Parillo received fair notice.  *See Davis v. Countrywide Home Loans*, No. 09-CV-8606, 2010 WL 3219306, at *3 (S.D.N.Y. June 23, 2010), *report and recommendation adopted*, 2010 WL 3219304 (S.D.N.Y. Aug. 13, 2010) (finding that, despite plaintiff's inartful complaint, defendants' response to the complaint demonstrated their ability to understand plaintiff's claims and sufficed to demonstrate fair notice).

2018) (summary order) (same); *Delgado v. City of New York*, No. 19-CV-632, 2023 WL 6390134, at *8 (S.D.N.Y. Oct. 2, 2023) (same).  New York law requires a plaintiff to show "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *5 (S.D.N.Y. July 20, 2022) (citation omitted).  "[T]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . under [Section] 1983."  *Dillon v. Rosen*, No. 22-CV-7035, 2022 WL 4538397, at *3 (S.D.N.Y. Sept. 28, 2022) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007)); *see also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest . . . will defeat a claim of false arrest under the Fourth Amendment."); *Jaegly v. Couch*, 439 F.3d 149, 150 (2d Cir. 2006) ("[A] claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime.").

Generally speaking, officers have probable cause to arrest when they have "reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Collier v. City of Mount Vernon*, No. 19-CV-523, 2024 WL 4043135, at *8 (S.D.N.Y. Sept. 4, 2024) (quoting *Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *8 (S.D.N.Y. Sept. 28, 2023) (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012))); *see also United States v. Hawkins*, 37 F.4th 854, 858 (2d Cir. 2022) (per curiam) (same).  As the Second Circuit has observed:

> To determine the existence of probable cause, a court considers the totality of the circumstances, based on "a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest."  The court considers those facts available to the officer at the time of the arrest and immediately before it.  The

significance of each of these factors may be enhanced or diminished by surrounding circumstances.

*Guan v. City of N.Y.*, 37 F.4th 797, 804 (2d Cir. 2022) (quotation marks and citations omitted). "On summary judgment, the existence of probable cause or arguable cause may be determined as a matter of law where 'there is no dispute as to the pertinent events and the knowledge of the officers.'" *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 449 (S.D.N.Y. 2018) (quoting *Weyant*, 101 F.3d at 852)).

Plaintiffs were arrested for obstructing governmental administration (N.Y. Penal Law § 195.05, a misdemeanor), and resisting arrest (N.Y. Penal Law § 205.30, a misdemeanor). (Pls' 56.1 ¶ 27.) Evelyn was also charged with assault in the second degree (N.Y. Pen. L. § 120.05, a felony). (*Id.* ¶ 28.) Defendants argue that they are entitled to summary judgment because "[t]he evidence establishes as a matter of law that probable cause existed for Defendants to arrest Plaintiffs." (Defs' Mem. 1; *see also id.* 5 (the officers "had probable cause to arrest Plaintiffs.").) Defendants further argue that the officers had probable cause because "it is not disputed by Plaintiffs . . . that [Joshua and Xavier] were directed to place their hands behind their back or to show the officers their hands" and that Joshua and Xavier "did not comply with these directives." (*Id.* at 5) To determine whether Defendants had probable cause to arrest Plaintiffs for any crime, the Court will analyze each offense in turn.

a. Obstructing Governmental Administration

The Court first assesses the objective reasonableness of the officers' belief that probable cause existed to arrest Plaintiffs for obstructing governmental administration ("OGA"). Section 195.05 of the New York Penal Law provides, in relevant part, that:

> A person is guilty of obstructing governmental administration when [he] intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from

performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]

*Id.*; *see also Patrizio v. Nelson*, No. 14-CV-7497, 2016 WL 3582047, at *9 (E.D.N.Y. June 28, 2016) ("[OGA] encompasses refusal to open the door to one's home for police where there is probable cause to arrest." (quoting *Johnson v. City of New York*, No. 05-CV-7519, 2008 WL 4450270, at *10 (S.D.N.Y. Sept. 29, 2008)). "Accordingly, the elements of the crime are: (1) intent; (2) preventing or attempting to prevent the performance of an official function; by (3) intimidation, physical force, or interference." *Shaheed*, 287 F. Supp. 3d at 449 (citing *People v. Stumpp*, 493 N.Y.S.2d 679, 680 (N.Y. Dist. Ct. 1985), *aff'd*, 505 N.Y.S.2d 758 (N.Y. App. Term. 1986)).

As to the first element, "because 'the practical restrains on police in the field are greater with respect to ascertaining intent, the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great.'" *Kass v. City of N.Y.*, 864 F.3d 200, 210 (2d Cir. 2017) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013)). Intent can be inferred where the defendant is informed of the official function that law enforcement is performing. *Cf. Quon v. Henry*, No. 14-CV-9909, 2017 WL 1406279, at *7 (S.D.N.Y. Mar. 27, 2017) (finding probable cause to arrest defendant for OGA and that defendant had the requisite intent where it was undisputed that law enforcement informed defendant why they needed to enter the premises).

As to the second element, courts "have confirmed that, except in cases where there is a 'legal obligation to open the door,' a refusal to do so, without more, does not obstruct, impair or prevent the administration of any law or governmental function, nor does it prevent the police from performing an official function." *People v. Holmes*, 997 N.Y.S.2d 669, 2014 WL 3583867, at *4 (N.Y. Crim. Ct. July 22, 2014); *Spero v. Tudor*, No. 11-CV-4850, 2012 WL 13098691, at *2

(E.D.N.Y. June 20, 2012) ("New York courts have . . . consistently interpreted the OGA statute to only prohibit interference with 'authorized conduct' on the part of the police officers." (citation omitted) (collecting cases)).  "Absent a warrant, . . . a legal obligation to admit the police only arises where there exists an exception to the warrant requirement, such [as] the presence of exigent circumstances." *Holmes*, 2014 WL 3583867, at *4–5 (collecting cases); *see also United States v. Allen*, 813 F.3d 76, 78 (2d Cir. 2016) ("[I]n the absence of exigent circumstances, the [Fourth] Amendment prohibits law enforcement officials from making a warrantless nonconsensual entry into a suspect's home to arrest him.") (citing *Payton v. New York*, 445 U.S. 573 (1980).  "Exigent circumstances exist when there is an 'urgent need to render aid,' because someone is 'in distress,' or 'injured' or threatened with 'imminent injury.'" *Rattray v. City of New York*, No.17-CV-8560, 2023 WL 2734419, at *8 (S.D.N.Y. Mar. 30, 2023) (quoting *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990), *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998), and *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), respectively)).  Six factors guide the inquiry into whether exigent circumstances are present:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Harris v. O'Hare*, 770 F.3d 224, 234 (2d Cir. 2014).

As to the third element, "[a]ny interference must be physical and must obstruct an official function . . . authorized by law." *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (citation and quotation marks omitted); *Caraballo v. City of New York*, 726 F.Supp.3d 140, 153 (E.D.N.Y. Mar. 28, 2024) (same).  The physical interference requirement is construed broadly, and is satisfied "when an individual intrudes himself into, or gets in the way of, an ongoing police

activity," *Kass*, 864 F.3d at 210 (alterations, quotation marks, and citation omitted), but "[OGA] does not require actual physical interference where the facts establish that an individual has willfully failed to comply with a lawful order of a law enforcement officer," *Murray v. Rederfer*, No. 15-CV-913, 2017 WL 1194371, at *6 (S.D.N.Y. Mar. 31, 2017).

It is undisputed that law enforcement responded to the Apartment on a report of a domestic dispute, (Pls' 56.1 ¶ 6), that Plaintiffs knew law enforcement requested access to the Apartment, (*id.* ¶ 16), that Plaintiffs indicated that they would not and did not open the door to the Apartment, (*id.* ¶¶ 17–19), and that law enforcement eventually forced the door open 40 to 50 minutes after initially knocking, (*id.* ¶¶13, 20).

The Parties dispute what was said to each other during the time between the initial knock and the door coming down. Plaintiffs claim that Parillo and the John Doe Officers did not inform Plaintiffs as to their purpose in seeking entry to the Apartment, and that Plaintiffs told law enforcement that Plaintiffs were safe and there was no need to enter. (Pls' 56.1 ¶ 12; Evelyn Decl. ¶¶ 10–12; Joshua Decl. ¶¶ 14–16; Xavier Decl. ¶¶ 8–14, 17.) In contrast, Defendants assert that Parillo and Reagan "advised [Plaintiffs] that the officers had to speak to the occupants . . . so as to ascertain their safety." (Pls' 56.1 ¶12; Ashraf Decl., Ex. C (Dkt. No. 33-3) at 4 (stating that officers "explained several times that due to the nature of the [911] call[,] officers could not leave without visually verifying that all parties in the apartment were safe.").) This dispute informs much of the inquiry here, including whether Plaintiffs had the requisite "inten[t] to prevent the officers from performing their official function." *Thompson v. Clark*, No. 23-CV-900, 2024 WL 2720230, at *4 (2d Cir. May 28, 2024) (italics and internal quotation marks omitted) (alteration adopted) (quoting *Kass*, 864 F.3d at 210)). Viewing the evidence in the light

most favorable to Plaintiffs, as required at summary judgment, it does not support a finding that Plaintiffs "took actions consistent with a criminal intent to interfere." *Id.*

"If [the officers] were not lawfully able to enter the home, then [Plaintiffs] committed no crime by obstructing their path." *Thompson v. Clark*, No. 14-CV-7349, 2018 WL 3128975, at *14 (E.D.N.Y. June 26, 2018) (citing *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995)). Defendants claim repeatedly that the existence of exigent circumstances was undisputed. (*See* Defs' Reply ¶¶ 5, 9, 12.) While the Parties do not dispute that a 911 call was made, (Pls' 56.1 ¶ 6), the exigency inquiry does not end there. The existence of an exigency "turns on an examination of the totality of the circumstances confronting law enforcement agents in the particular case." *Brown v. City of New York*, No. 14-CV-2700, 2015 WL 427942, at *3 (E.D.N.Y. Feb. 2, 2015) (alteration adopted) (quoting *MacDonald*, 916 F.2d at 769)). Because the factual circumstances between the initial knock and the entry are disputed, it is not clear as a matter of law whether an exigency existed.

Accordingly, because there are disputed facts with respect to whether exigent circumstances existed such that Defendants had probable cause to arrest Plaintiffs, summary judgment is denied as to this claim. *See Patrizio*, 2016 WL 3582047, at *11–12 (denying summary judgment where plaintiff refused to open a door to law enforcement, and disputed facts remained concerning what happened once the door was opened and "whether [the] plaintiff did more in frustrating a serious police investigation to warrant his arrest).[6]

---

[6] Evelyn was additionally charged with assault in the second degree. (Pls' 56.1 ¶ 28.) None of Defendants' asserted material facts specifically discuss Evelyn's arrest or the circumstances that led to her being charged for assault, (*see generally* Pls' 56.1), short of noting that she was so charged, (*id.* ¶ 28). At no point do Defendants argue that they had probable cause to arrest Evelyn for assault. (See Defs' Mem. 5 ("[Defendants] had probable cause to arrest Plaintiffs[] inasmuch as that . . . [they] responded to [the Apartment] upon a report of a domestic dispute involving a knife."); *id.* ("[T]he police had probable cause to arrest [Joshua and Xavier]

b.  Resisting Arrest

Defendants argue that "[i]t was objectively reasonable for [Parillo], given the facts known to [him] at the time of Plaintiffs' arrest, to believe that probable cause existed for arresting Plaintiffs for the crimes of [OGA and resisting arrest]."  (Defs' Mem. 8; Defs' Reply ¶ 16 (same).)

Resisting arrest on its own cannot constitute probable cause to arrest.  In *Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003), the Second Circuit made clear that under New York law, there must be probable cause to arrest someone for an independent crime apart from "resisting arrest" in order to defeat a false arrest claim.  *Id*. at 336.  The *Curry* court noted that under New York law, "'[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.'"  *Id*. (quoting N.Y. Penal Law § 205.30).  The Second Circuit went on to explain that it is "well established in New York that probable cause to arrest is a prerequisite for making an authorized arrest, and if there is no probable cause to arrest a person, that person cannot be guilty

for the crimes of [OGA] . . . and resisting arrest.").)  When arguing that the officer defendants have qualified immunity, Defendants state only that "probable cause existed for arresting Plaintiffs[] for the crimes of [OGA] . . . and resisting arrest."  (*Id.* 8).

The record includes evidence that says that Evelyn "jumped" on an officer's back while he was attempting to gain control of Xavier.  (*See* Police Report 5.)  Plaintiffs dispute this fact— Evelyn avers that she did not "jump[] on an officer's back or assault[] an officer in any other way to prevent them from handcuffing Xavier."  (Evelyn Decl. ¶ 16.)  Defendants' 56.1 Statement is devoid of any asserted material facts regarding Evelyn's alleged assault or probable cause to arrest Evelyn for the same.  (*See generally* Pls' 56.1.)

As such, the Court is unable to determine as a matter of law whether she was properly charged with resisting arrest in connection with the assault charge.  To the extent Defendants' Motion can be read as asserting that there was probable cause to arrest Evelyn for assault (and it appears that it cannot), summary judgment is denied as there are material facts preventing a finding that officers had probable cause for that arrest.  *See Polanco v. City of New York*, No. 14-CV-7986, 2018 WL 1804702, at *7 (S.D.N.Y. Mar. 28, 2018) ("[W]e find that there are issues of fact that cannot be resolved on this summary judgment motion as to whether there was probable cause to prosecute plaintiff for . . . assaulting a police officer.").

of resisting arrest." *Id.* (quotation marks and citation omitted).  Courts have applied this law in

the OGA and resisting arrest context.  *See McKnight v. Vasile*, No. 11-CV-6328, 2017 WL

1176051, at *20 (W.D.N.Y. Mar. 30, 2017) (finding that a lack of probable cause to arrest for

OGA "compels the determination that [the officer] likewise lacked probable cause to arrest . . .

for resisting arrest." (citing, inter alia, *Curry*, 416 F.3d at 336)); *Dancy v. McGinley*, 843 F.3d 93,

113 n.17 (2d Cir. 2016) ("Because there was no arguable probable cause to arrest . . . for [OGA],

there was also no probable cause to arrest for *resisting* that arrest." (emphasis in original)).

The Court cannot hold as a matter of law that there was probable cause to arrest Plaintiffs

for OGA.  *See* supra Section II.B.1.a.  As such, it likewise cannot hold and need not analyze at

this stage whether there was probable cause to arrest for resisting arrest.  *See Besedin v. County*

*of Nassau*, No. 18-CV-819, 2024 WL 4225956, at *9 (E.D.N.Y. Sept. 18, 2024) (denying

defendant's motion for summary judgment on a false arrest claim for resisting arrest because

there were "disputed issues of material fact that preclude[d] a finding that the officers had

probable cause").

### 2.  Malicious Prosecution

"To state a [Section] 1983 malicious prosecution claim a plaintiff must show a violation

of his rights under the Fourth Amendment and must establish the elements of a malicious

prosecution claim under state law." *Rodriguez v. City of N.Y.*, 623 F.Supp.3d 225, 238 (S.D.N.Y.

Aug. 22, 2022) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022)).  To state a

claim for malicious prosecution under New York law a plaintiff must show:  "(1) the initiation or

continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual

malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64

(2d Cir. 2019) (quotation marks and citation omitted).  In addition, to prevail on a cause of action for malicious prosecution under Section 1983, the plaintiff must establish that "there was a . . . sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *10 (S.D.N.Y. July 19, 2022) ("In addition to the elements of a state-law malicious prosecution claim, however, to state a federal malicious prosecution claim under [Section] 1983, a plaintiff must also have suffered a post-arraignment deprivation of liberty implicating his Fourth Amendment rights.").

Defendants argue that Plaintiffs' malicious prosecution claim "must fail as a matter of law" because the officers "had probable cause to arrest [P]laintiffs" and because "there is no record evidence to suggest that Defendants bore any particular malice toward Plaintiffs."  (Defs' Mem. 7.)

### a.  Initiation of a Criminal Proceeding

"Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, a plaintiff may overcome that presumption by demonstrating that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2017 WL 1064682, at *2 (S.D.N.Y. Mar. 20, 2017), *aff'd*, 722 F. App'x 32 (2d Cir. 2018) (citation and quotation marks omitted).  Regarding claims against police officers, "courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors."  *Id.* (quotation marks and citations omitted); *see also Cameron*

*v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can

'initiate' prosecution by filing charges or other accusatory instruments.") (quoting *Ricciuti v.*

*N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997))).

It is undisputed here that Parillo provided the sworn statements in the felony complaints

and misdemeanor information and signed them.  (Pls' 56.1 ¶ 30.)  In opposition to the instant

Motion, Plaintiffs argue that "Defendant Parillo initiated criminal proceedings on behalf of the

Police Department."  (Pls' Opp. 21.)  Thus, this element is met.  *Cf. Delanuez v. City of Yonkers*,

No. 20-CV-4476, 2022 WL 16540682, at *7 (S.D.N.Y. Oct. 28, 2022) (holding that the first

element of a malicious prosecution claim was sufficiently alleged where the defendant swore to

and signed the felony complaint).

### b.  Termination of the Proceeding in Plaintiffs' Favor

"To demonstrate a favorable termination of a criminal prosecution for purposes of the

Fourth Amendment claim under [Section] 1983 for malicious prosecution, a plaintiff need only

show that his prosecution ended without a conviction."  *Thompson v. Clark*, 596 U.S. 36, 39

(2022).  There is no dispute that all criminal charges against Plaintiffs were dismissed.  (Pl.'s

56.1 ¶ 33.)  This is sufficient to establish that the proceedings ended in Plaintiffs' favor.

### c.  Probable Cause

Just as probable cause is a complete defense to a claim of false arrest, "continuing

probable cause is a complete defense to a constitutional claim of malicious prosecution."  *Betts v.*

*Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *see also Manganiello v. City of N.Y.*, 612 F.3d 149,

161–62 (2d Cir. 2010) ("Probable cause is a complete defense to a claim of malicious

prosecution in New York[.]") (citation omitted).  "Probable cause, in the context of malicious

prosecution, has been described as such facts and circumstances as would lead a reasonably

prudent person to believe the plaintiff guilty." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 243 (2d Cir. 2020) (alterations omitted). "The Second Circuit has clarified that probable cause for a malicious prosecution claim means probable cause to believe that [the prosecution] could succeed[.]" *Delanuez*, 2022 WL 16540682, at *8 (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003)) (quotation marks omitted). The Second Circuit has also cautioned courts not to "conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted," because in a malicious prosecution action, "[o]nly the latter kind of probable cause is at issue." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). Therefore, in instances where evidence "would clearly not be admissible", "there would be no probable cause to believe that the prosecution could succeed." *Boyd*, 336 F.3d at 77. "Courts applying this standard have largely held that . . . evidence obtained in violation of a plaintiff's Fourth Amendment rights cannot be relied on in arguing that there was probable cause to believe the plaintiff could be successfully prosecuted." *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *8 (S.D.N.Y. Mar. 9, 2017) (collecting cases). Thus, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

As discussed above, *see* supra Section II.B.1.a & n.5, there is a question as to whether Defendants had probable cause to arrest Plaintiffs for OGA and assault. There are disputes of fact pertaining to what the Parties said to each other, which impact whether an exigent circumstance existed that supports the officers' determination of probable cause as it relates to the OGA charge, and which prevents a determination as a matter of law regarding the existence of probable cause for OGA. Similarly, there are disputes of fact pertaining to Evelyn's assault charges, which preclude finding probable cause for that arrest. Therefore, this Court cannot

determine as a matter of law whether Defendants had probable cause to believe that Plaintiffs could be successfully prosecuted for OGA and assault.

Because a person cannot be guilty of resisting arrest if there is no probable cause to arrest, the Court also cannot determine whether there was probable cause to believe Plaintiffs could be successfully prosecuted for resisting arrest. *Curry*, 316 F.3d at 336 ("[P]robable cause to arrest is a prerequisite for making an authorized arrest, and if there is no probable cause to arrest a person, that person cannot be guilty of resisting arrest.") (quotation marks and citation omitted).

### d.  Malice

Defendants argue that "there is no record evidence to suggest that [Parillo] bore any particular malice toward Plaintiffs or indeed, that [Parillo] had any interaction with Plaintiffs prior to their arrest." (Defs' Mem. 7.)  Plaintiffs argue that, since there was no probable cause to arrest Plaintiffs, "the Court may infer malice at this stage." (Pls' Opp. 20.)

 "Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive." *Guillen v. City of New York*, 625 F. Supp. 3d 139, 156 (S.D.N.Y. 2022) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)) (internal quotation marks omitted). "Lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Torres v. City of N.Y.*, No. 20-CV-4007, 2022 WL 955152, at *9 n.6 (E.D.N.Y. Mar. 30, 2022) (quoting *Ricciuti*, 124 F.3d at 131); *see also Boyd*, 336 F.3d at 78 ("A lack of probable cause generally creates an inference of malice.") (citation omitted).  Accordingly, once a court finds "an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well." *Boyd*, 336 F.3d at 78; *see also Ricciuti*, 124 F.3d at 131 ("a jury could

find that probable cause for the charges against the plaintiffs was lacking, and that finding alone would support an inference of malice.").

Because the Court cannot determine as a matter of law that Parillo had probable cause to arrest Plaintiffs for any charge, there is an inference of malice that is "sufficient to withstand summary judgment." *Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 605 (S.D.N.Y. Sept. 29, 2023); *see also Walker*, 664 F. Supp. 3d at 518 (finding an inference of malice where there remained a dispute as to the existence of probable cause to arrest).

### e.  Post-Arraignment Deprivation of Liberty

No Party has provided evidence or pointed to a lack of evidence pertaining to any post-arraignment deprivation of liberty that Plaintiffs suffered.  Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P.*, 735 F.3d at 123 (alteration, citation, and quotation marks omitted).  Because Defendants have not pointed to the lack of evidence of post-arraignment deprivation of liberty, accordingly, summary judgment on the malicious prosecution claim cannot be granted in their favor.

### 3.  Excessive Force

"Claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth

Amendment and its reasonableness standard." *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 519 (S.D.N.Y. 2023) (quoting *Pateman v. City of White Plains*, No. 17-CV-6156, 2020 WL 1497054, at *13 (S.D.N.Y. Mar. 25, 2020)). "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting [the officers], without regard to [the officers'] underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). To evaluate the reasonableness of an officer's conduct, a court should "consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *see also Kerman v. City of N.Y.*, 261 F.3d 229, 239 (2d Cir. 2001) (observing that the reasonableness determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (quotation marks and citation omitted)).

"De minimis injuries can serve as evidence that de minimis force was used." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 798 (S.D.N.Y. 2021) (collecting cases). However, a "[p]laintiff need not demonstrate serious injury to prevail in an excessive force claim; bruising and other nonpermanent injuries are sufficient." *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 177 (E.D.N.Y. 2010) (collecting cases) (quoting *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at *15 (S.D.N.Y. Mar. 31, 2009)).

It is undisputed that Plaintiffs received scratches and bruises during the course of the arrest. (Pls' 56.1 ¶¶ 23, 26, 32.) The day of the arrest, Plaintiffs went to a hospital, where

Evelyn received "a pain injection and pills," (Nessen Decl., Ex. 4 ("Evelyn Dep.") (Dkt. No. 33-5) at 28:10–15), and Joshua and Xavier were given ibuprofen, (Nessen Decl., Ex. 5 ("Joshua Dep.") (Dkt. No. 33-6) at 75:10–13 ("The doctor they prescribed us, like, over-the-counter ibuprofen and I took that for, like, three weeks.  Maybe a month."); Nessen Decl., Ex. 6 ("Xavier Dep.") (Dkt. No. 33-7) at 27:16–17 ("[Medical staff] took X-ray[s] and they gave us ibuprofen.").)  Evelyn avers that, since the events in question, she has been treated by a doctor for pain management, and that she has taken prescribed medicine for pain and to sleep through at least May 2023.  (Evelyn Dep. at 34:25–35:5.)

Defendants argue that Plaintiffs' "injuries are de minimis and as such do not constitute a violation of Plaintiffs' [C]onstitutional rights."  (Defs' Mem. 10 (emphasis omitted).)  The Parties dispute whether Parillo and John Doe Officers placed their knees on Plaintiffs' backs in other to effect their arrests.  (*Compare* Defs' Mem. 10 (asserting that Parillo and John Doe Officers "strongly den[y]" placing their knees on Plaintiffs' back, but citing nothing in the record as support), *with* Pls' Opp. 22–23; *see also* Evelyn Dep. at 49:23–50:3 ("[T]wo police officers were on me and had their knees on me and I told them I couldn't breathe because of their weight."); Joshua Dep. at 45:12–17 ("I was at a point of unconsciousness because they had their knees on my neck."); Xavier Dep. at 26:5–7 ("One of the cops put the[ir] knee on my neck the whole time, for like five minutes.").)  Defendants' assertion is further called into question by the record evidence, which indicates that some police officers did place their knees on Plaintiffs.  (*See* Police Report 4 (noting that "[an officer] attempted to gain control of [Joshua's] right wrist and placed a knee on the lower[] shoulder area."); Ashraf Decl., Ex. C at 4 ("PO Parillo then placed his knee on the suspect[']s back."); *id.* ("PO McCormack then placed his knee between the suspect[']s shoulder blades in an attempt to gain control of his body.").)

Courts have denied summary judgment on excessive force claims that center around officers placing their knee on individuals' back in the course of handcuffing. *See Sanders v. Long Island Newsday*, No. 09-CV-2393, 2015 WL 5475694, at *9–10 (E.D.N.Y. July 14, 2015) (denying summary judgment on a claim of excessive force that involved an officer placing a knee on plaintiff's back where there were disputed material facts); *Alvarez v. City of New York*, No. 11-CV-5464, 2015 WL 1499161, at *7 (S.D.N.Y. Mar. 30, 2015) (denying summary judgment on an excessive force claim where the officer "jammed his knees into [the plaintiff's] back and neck, and rear-handcuffed [the plaintiff]."); *Davis v. Brouillette*, 349 F. Supp. 2d 847, 853 (D. Vt. 2004) (denying summary judgment as to excessive force where a factual dispute remained whether and how hard a police officer kneed the plaintiff in the lower back while handcuffing).

As discussed above, the Parties dispute the circumstances surrounding Plaintiffs' arrests. Defendants claim that Joshua "ignored [law enforcement's] directives," (Pls' 56.1 ¶ 22), Parillo "attempted to gain control of [Joshua] and directed him to stop resisting," (*id.* ¶ 23), and that Xavier "ignored . . . directives" to "place his hands behind his back," (*id.* ¶¶ 25–26). Plaintiffs dispute that they received directions from law enforcement and that they resisted any directives. (*See* Pls' 56.1 ¶¶ 21–26; *see also* Evelyn Decl. ¶ 15 (The officers "did not ask me or Xavier to put our hands behind our backs or anywhere else, but immediately threw us face down onto the floor."); *id.* ¶ 17 ("I did not resist at all."); Joshua Decl. ¶ 22 ("I wasn't given the time to respond to anything [the officers] said. . . .  Officers immediately grabbed me and smashed my face [] up against the narrow hallway wall."); *id.* ¶ 23 ("I did not resist at all while they handcuffed me."); Xavier Decl. ¶ 25 ("No one asked me to show my hands."); *id.* ¶ 28 ("I was not resisting in any way while they put handcuffs on me.")).  Defendants claim that no officer, including Parillo,

placed their knee on Plaintiffs' backs.  (Defs' Mem. 10.)  Plaintiffs counter that all three of them experienced a knee on the back and/or neck.  (Evelyn Decl. ¶ 17 ("[Officers] had their knees on my back."); Joshua Decl. ¶ 23 ("[T]wo [officers] placed their knees on my back and neck."); Xavier Decl. ¶ 26 ("One cop put his knee on my neck and another on my back.").)

Given the conflicting version of events, "a reasonable jury could find that force was not warranted to effect Plaintiff[s'] arrest[s]."  *Alvarez*, 2015 WL 1499161, at *7.  Because there is a question of whether there was probable cause to arrest, the Court cannot determine as a matter of law whether Defendants used excessive force.

Therefore, Defendants' Motion for Summary Judgment regarding the excessive force claim is denied.

### 4.  Qualified Immunity

Defendants also argue that they are entitled to summary judgment because of the qualified immunity doctrine.  (*See* Defs' Mem. at 7–8.)  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The qualified immunity defense, thus, is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013)).

"[I]n the qualified immunity context, an officer invoking the probable cause defense need only establish that he or she acted with arguable probable cause[.]"  *Schlaepfer v. City of New York*, No. 20-CV-3339, 2022 WL 4484571, at *9 (S.D.N.Y. Sept. 27, 2022) (quotation marks and

citation omitted); *see also Kass*, 864 F.3d at 206 ("An officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged.").  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *12 (S.D.N.Y. Mar. 26, 2021) (quoting *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)); *see also Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (same).

"[S]ummary judgment for defendants on grounds of qualified immunity is . . . appropriate only . . . if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *Turner v. City of N.Y.*, No. 18-CV-9626, 2019 WL 6173701, at *6 (S.D.N.Y. Nov. 19, 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).  "In the event that there are triable disputes as to the circumstances that could dictate whether the defendants could reasonably believe that his conduct was lawful, summary judgment based on an immunity defense must be denied." *Allen v. N.Y.C. Dep't of Correction*, No. 06-CV-7205, 2010 WL 1644943, at *15 (S.D.N.Y. Mar. 17, 2010), *report and recommendation adopted*, 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010).

Defendants argue that the officers are protected by qualified immunity because "[i]t was objectively reasonable for [the officers], given the facts known to them at the time of Plaintiffs' arrest, to believe that probable cause existed for arresting Plaintiffs[] for the crimes of

obstructing governmental administration in the second degree, . . . and resisting arrest, . . . based on their observations of and interactions with Plaintiffs."  (Defs' Mem. 8.)

The Court will address this argument as it applies to the false arrest claim and malicious prosecution claim in turn.

a.  False Arrest

As discussed above, because factual disputes preclude a finding of exigent circumstances at this stage, the Court cannot determine whether there was arguable probable cause to arrest Plaintiffs.  Defendants fail to cite undisputed evidence that establishes that they had arguable probable cause to arrest Plaintiffs for OGA or to arrest Evelyn for assault.  (*See generally* Defs' Mem.)  Defendants simply state in a conclusory manner that "[i]t was objectively reasonable for the defendant police officers, given the undisputed facts known to them, to believe that probable cause existed for arresting [P]laintiffs."  (Defs' Reply ¶ 16 (emphasis omitted).)  "Since qualified immunity is as an affirmative defense, defendants 'bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time.'"  *Allen*, 2010 WL 1644943, at *15.  Defendants have not made such a showing here.  (*See generally*, Defs' Mem.; Defs' Reply.)  *See also Walker*, 664 F. Supp. 3d at 522 (holding that the court could not grant qualified immunity on the false arrest claim because there were material factual disputes "underpinning the probable cause determination for [OGA]"); *Grytsyk v. Morales*, No. 19-CV-3470, 2023 WL 6122693, at *5 (S.D.N.Y. Sept. 19, 2023) (denying summary judgment where defendants did "not me[et] their burden to show probable cause or arguable probable cause with respect to an OGA offense because the facts are disputed or otherwise insufficient"); *Fana v. City of New York*, No. 15-CV-8114, 2018 WL 1581680, at *13–14 (S.D.N.Y. Mar. 27, 2018) (same).

In any event, the material factual disputes underpinning the probable cause determination for OGA and assault make a granting of qualified immunity on the false arrest and malicious prosecution claims inappropriate here as such facts are material to a determination of reasonableness.  *See Kerman*, 261 F.3d at 240 ("[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." (quotation marks and citation omitted)); *see also Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (holding that when material facts pertaining to immunity are in dispute, the appropriate procedure is to allow the jury to resolve any disputed facts material to the qualified immunity issue, so that the court can make the "ultimate determination of whether the officer's conduct was objectively reasonable").

### b.  Malicious Prosecution

Because the Court cannot determine whether there was arguable probable cause to arrest Plaintiffs it also cannot determine whether there was arguable probable cause to believe Plaintiffs could be successfully prosecuted for OGA, resisting arrest, or assault.  Accordingly, the Court cannot grant Defendants summary judgment on the malicious prosecution claim on the basis that they had arguable probable cause to believe Plaintiffs could be successfully prosecuted on the charged offenses.  *See Cooper v. Dieugenia*, No. 14-CV-6136, 2017 WL 818367, at *7 (E.D.N.Y. Feb. 27, 2017) ("[G]iven the parties' disputes over key facts and the absence of other material information, the Court cannot determine, as a matter of law, whether officers of reasonable competence could disagree on whether the probable cause test was met."); *Bryant v. Serebrenik*, No. 15-CV-3762, 2016 WL 6426372, at *5 (E.D.N.Y. Oct. 28, 2016) ("The same disputed facts that prevent defendants from establishing probable cause also doom their qualified immunity defense at this stage.").

### III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied.[7]  The Court will hold a status conference on January 23, 2025, at 12:00 PM.  The Clerk of the Court is respectfully requested to terminate the pending motions at Dkt. Nos. 32 and 41.

SO ORDERED.

Dated:    January 13, 2025
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

---

[7] Defendant City of Yonkers is dismissed because Plaintiffs have explicitly abandoned their claim against that Defendant.  (*See* Pls' Opp. 1.)  *See Seward*, 2023 WL 6387180, at *14.
    Defendants Yonkers Police Officers John Does #1-20 are also dismissed because where "discovery has closed and the Plaintiff[s] ha[ve] had ample time and opportunity to identify and serve [John Doe Officers], it is appropriate to dismiss [them]."  *Tarrant*, 2022 WL 17070062, at *3.